UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
ANITA V. WOOTEN-FRANCIS

               Plaintiff,

   -against-                              **MEMORANDUM AND ORDER**
                                                     Case No. 11-CV-2341 (FB) (MDG)
CITY OF NEW YORK, NYC BOARD OF
EDUCATION a.k.a. DEPARTMENT OF
EDUCATION, et al.,

               Defendants.
---------------------------------------------------------x

*Appearances:*
| | |
|---|---|
| *For the Plaintiff*: | *For the Defendants*: |
| ANTOINETTE M. WOOTEN, ESQ. | MAXWELL D. LEIGHTON, ESQ. |
| The Wooten Legal Consulting Group, PC | New York City Law Department |
| 233 Broadway | 100 Church Street |
| New York, NY 10279 | New York, NY 10007 |

**BLOCK, Senior District Judge:**

       Plaintiff, Anita V. Wooten-Francis ("Wooten-Francis"), asserts claims of employment discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII"); the Fourteenth Amendment of the United States Constitution; New York State Human Rights Law, N.Y. Exec. Law §§ 290-301 ("NYSHRL"); and New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 to 8-703 ("NYCHRL").

       Wooten-Francis alleges that defendants discriminated against her by subjecting her to a hostile work environment and retaliating against her by terminating her from her non-tenured position as a paraprofessional. She also alleges that her due process rights were violated because she did not receive a hearing pursuant to Education Law § 3020 before her

1

termination.

Defendants move for summary judgment under Fed. R. Civ. P. 56 on all claims. They argue that plaintiff's due process rights were not violated because she had no property interest in her non-tenured paraprofessional job. They also argue that Wooten-Francis has failed to demonstrate the existence of a hostile work environment. Finally, with respect to the termination, defendants argue that Wooten-Francis has (1) failed to establish a *prima facie* case of retaliatory discrimination; and (2) even if she could establish a *prima facie* case, she has failed to establish that the non-discriminatory reason for her discharge was pretextual and that the real reason was based on her religion. For the reasons that follow, the Court agrees with defendants and grants their motion in its entirety.

# I

The following facts[1] are undisputed.

Wooten-Francis is a former paraprofessional (a teacher assistant) who worked at Public School 224 in Brooklyn, NY, from 1986 to 2010. Defendant George Andrews ("Andrews") became the principal of the school in 2004.[2]

The New York State Department of Education maintains a strict policy, applicable

---

[1]Plaintiff, although represented by counsel, failed to provide a responsive statement of facts as required by Local Rule 56.1 and largely failed to address the defenses and arguments raised in defendants' brief in support of their motion. Nonetheless, the Court has searched the full record to discern whether any material facts are contested and supported by evidence.

[2]Although the record is unclear about when Andrews became principal, the precise date is immaterial.

system-wide, against the use of corporal punishment to discipline students. Any report of a professional using corporal punishment is immediately investigated by the Department of Education's Office of Special Investigations ("OSI"). The OSI is a separate division within the Department of Education and operates independent of the individual schools. If an OSI investigation concludes that allegations of corporal punishment are substantiated, the professional is subject to strong disciplinary consequences that may include termination.

On March 11, 2010, Cruzmaria Corrales ("Corrales"), a substitute teacher, alleged that during a chaotic episode in a kindergarten classroom, she observed Wooten-Francis discipline a child by grabbing him by the back of the neck and swinging him around. Corrales also alleged that she saw Wooten-Francis pound her fist on the top of another student's head. She reported these allegations to defendant Christine Charles ("Charles"), the Assistant Principal of P.S. 224, and made a written statement. Although Wooten-Francis argues that Corrales's report was untruthful and inaccurate, she does not dispute that Corrales made a report alleging that she used corporal punishment.

In accordance with protocol, the allegations were reported to the OSI for investigation. The following day, the OSI advised Andrews that he should engage in no further investigative action on the matter until the OSI provided instructions on how to proceed. Andrews placed Wooten-Francis on administrative leave with full pay and benefits while OSI investigated the matter.

After she was placed on leave, Wooten-Francis filed a complaint with the New York

State Division of Human Rights ("DHR") on April 20, 2010,[3] alleging employment discrimination based on age, race, creed, and disability.[4] In her complaint, Wooten-Francis wrote that she had been placed on leave from her position without cause, that she believed she had been discriminated against because she had spoken out against wrong practices related to prayer, and that she had been injured in the line of duty.

From March through May 2010, Karen Hughes ("Hughes"), an OSI investigator, interviewed Wooten-Francis, Corrales, Charles, Andrews, and four kindergartners—including the two who were the alleged victims of corporal punishment. Hughes issued a report on June 1, 2010, finding that the allegations made by the substitute teacher were "substantiated." She concluded with a recommendation that Andrews take "strong disciplinary action," including "possible termination" of the plaintiff. OSI Report, Turner-Beverly Decl. Ex. A, at 8.

The following week, on June 7, 2010, Andrews met with Wooten-Francis and her union representative to discuss the findings of the OSI report. Wooten-Francis and her representative requested that Andrews provide additional documents, including witness statements. On June 15, 2010, they met again, and Andrews provided additional documents. Wooten-Francis alleges that Andrews failed to provide the specific documents

---

[3]Wooten-Francis's complaint was stamped received on March 31, 2010, but the official report of the NY State Department of Human Rights lists April 20, 2010, as the filing date. *See* DHR Determination and Order after Investigation (December 1, 2010).

[4]Wooten-Francis did not provide explanations for the basis of her age and race discrimination allegations in her state DHR charge, and the record shows that she has abandoned them.

she was seeking, but she does not contest that they met again prior to her termination. On June 24, 2010, Andrews wrote a letter to Wooten-Francis in which he summarized his account of their meetings, and he terminated her employment, effective June 28, 2010. The parties agree that Andrews made the decision to terminate her.

As a paraprofessional, Wooten-Francis was subject to a collective bargaining agreement ("CBA") between the Department of Education and her union. Accompanied by a union representative, she grieved her termination as required under the CBA. On October 22, 2010, the Chancellor's Representative determined that the OSI report was substantiated and upheld the termination decision. The report concluded that "Good and sufficient reason existed for the grievant's discharge. Due consideration was extended." Grievance Decision, Turner-Beverly Decl., Ex. F, at 2. Wooten-Francis did not challenge the Chancellor's determination by filing a petition under New York Civil Practice Law and Rules § 7801 ("Article 78"), in New York State Court.

On December 1, 2010, the DHR issued its opinion that there was no probable cause to support Wooten-Francis's allegations. Later that month, Wooten-Francis filed a complaint with the EEOC alleging discrimination based on race and religion.[5] In February 2011, the EEOC adopted the findings of the state agency and issued her a right-to-sue letter, and on May 13, 2011, she filed her original complaint in this Court. She filed her Amended Complaint August 28, 2011.

---

[5]Plaintiff's evidence includes undated EEOC material, but defendants accept as undisputed that Wooten-Francis made her EEOC filing in December 2010.

## II.

Wooten-Francis's Amended Complaint alleges that (1) Andrews discharged her in retaliation for her religious practices; (2) that her termination without a hearing violated her due process rights, and (3) before she was terminated, she was subjected to a hostile work environment. In support of her claims, she alleges that during the 2006-2007 school year, Andrews told her it was unethical and illegal to pray in her classroom before class started. She also makes generalized allegations in support of her hostile work environment claim. These allegations lack a specific date, and instead broadly assert that from 2004 through 2010 Andrews told her that she could not do the following: pray in classrooms before classes started, read the Bible before class, hold prayer meetings before class, organize a prayer group, and play gospel music in her classroom. She also alleges that on at least one occasion, Andrews asked her, "Where is your God now?" Finally, Wooten-Francis offers statements about her medical conditions, which include carpal tunnel syndrome and an injured foot, in apparent criticism of the OSI investigation process.

The Court grants summary judgment "whenever it determines that there is no genuine issue of material fact to be tried." *Savino v. City of New York*, 331 F.3d 63, 71 (2d Cir. 2003) (citing Fed. R. Civ. P. 56(c) and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id*. (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)).

The Court must "resolve all ambiguities and draw all factual inferences in favor of the nonmoving party." *Id*. (citing *Anderson*, 477 U.S. at 255). Where, however, the

non-moving party bears the burden of proof at trial, the moving party need only "'show[]' —that is, point[] out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Upon such a showing, "the non-moving party must respond with 'specific facts showing that there is a genuine issue for trial,'" *Golden Pac. Bancorp. v. FDIC*, 375 F.3d 196, 200 (2d Cir. 2004) (quoting Fed. R. Civ. P. 56(e)); conclusory statements, conjecture and other types of unsupported assertions are not sufficient. *See Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14 (2d Cir. 1995).

As the Second Circuit has observed, summary judgment in a discrimination case should be granted with caution "because 'smoking gun' evidence of discriminatory intent is rare and most often must be inferred." *Forsyth v. Federation Employment & Guidance Serv.*, 409 F.3d 565, 569 (2d Cir. 2005). Summary judgment is nevertheless appropriate when "the moving party has submitted facts sufficient to show that the non-moving party's claim has no merit, and the non-moving party's attempts to rebut the movant's facts consist only of 'mere allegations or denials' of the facts asserted by the movant." *Id*. at 570 (quoting Fed. R. Civ. P. 56(e)).

**A. Retaliatory Termination**

Title VII prohibits employers from discharging an employee based on her religion, which includes beliefs and practices that can reasonably be accommodated by the employer. *See* 42 U.S.C. § 2000e(j). Title VII and the state and local human rights law claims are analyzed under the three-step burden shifting approach first set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See also Mandell v. Cnty. of Suffolk,* 316 F.3d 368,

7

377 (2d Cir. 2003) ("We analyze plaintiff's federal and state law discrimination claims together since in other contexts we have applied federal standards of proof to discrimination claims under the state Human Rights Law."). To make a *prima facie* case of unlawful retaliation, a plaintiff must prove that: "(1) he participated in a legally protected activity; (2) his employer knew of the protected activity; (3) an adverse employment action ensued; and (4) a causal connection existed between the protected activity and the adverse employment action." *Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 205-06 (2d Cir. 2006). Once a *prima facie* case is established, "the burden of production shifts to the employer to articulate some legitimate, nondiscriminatory reason for the termination." *Patterson v. Cnty. of Oneida,* 375 F.3d 206, 221 (2004) (quotations and citations omitted). Finally, at the third step, if "the employer carries this burden, the burden shifts back to the plaintiff to demonstrate by competent evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.*

In support of her claim, Wooten-Francis relies on her generalized allegations spanning 2004 to 2010. She also offers her own affidavit, which states that on March 11, 2010, two secretaries told her that Andrews was in the "process of terminating me only because I continue to pray, play my gospel music, keep on reading my bible." Wooten-Francis Aff., Wooten Decl., Ex. N, ¶ 16. This statement, however, about what two secretaries may have reported to Wooten-Francis is hearsay, and is not admissible, even for a Rule 56 summary judgment motion.[6] *See Major League Baseball Properties, Inc. v.*

---

[6]"An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be *admissible in evidence*, and show that

8

*Salvino, Inc.*, 542 F.3d 290 (2d Cir. 2008) (explaining that hearsay testimony "that would not be admissible if testified to at the trial may not properly be set forth in [the Rule 56(e)] affidavit.").

Setting aside the hearsay comment, the Court, which must draw factual inferences in favor of the nonmoving party when analyzing a summary judgment motion, *see Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), finds that the remaining evidence, while thin, is sufficient to infer the possibility that Wooten-Francis engaged in protected activity that was known to Andrews. "Protected activity" includes opposition to discriminatory employment practices or participation in any investigation, proceeding, or hearing under Title VII. *See* 42 U.S.C. § 2000e-3(a). The Second Circuit has stated that "informal protests of discriminatory employment practices, including making complaints to management" satisfy the requirement. *Hubbard v. Total Commc's, Inc.*, 347 Fed. Appx. 679, 381 (quoting *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir.1990)). Wooten-Francis does not allege that she ever told Andrews that she believed his comments were discriminatory; but under the broad interpretation courts have given to the phrase "protected activity," the Court can infer that by continuing to pray, read the Bible, organize her prayer group, play gospel music in her classroom, and hold prayer meetings, she had engaged in an "informal protest" that constituted opposition to a discriminatory employment practice.

The Court must also determine whether there is a "causal connection" that links those activities to her termination. *Kessler*, 461 F.3d at 206. "The causal connection needed

---

the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4) (emphasis added).

for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action." *Summa v. Hofstra Univ.*, 708 F.3d 115, 127-28 (2d Cir. 2013). "[E]ven gaps of four months" between the activity and the adverse action "can support a finding of causation" that is sufficient for a *prima-facie* case. *Id.* at 128. Wooten-Francis has established that she engaged in classroom prayer and Bible reading, along with the other activities she alleges, up until her reassignment on March 11, 2010, and then she was terminated three months later on June 28, 2010. Despite the three month gap, her termination was sufficiently close in time to the March 2010 activities to infer the causation required for Wooten-Francis to make her *prima facie* case.

Nonetheless, even after establishing a *prima facie* case of retaliatory discharge with the Court's permissive inferences, Wooten-Francis does not satisfy her ultimate burden. Defendants point to the OSI investigation and report—which independently concluded that the allegations regarding corporal punishment were "substantiated"—as the non-discriminatory basis for the termination decision. Wooten-Francis produces no evidence that this explanation was offered as pretext, especially in light of the Department of Education's strict policy against corporal punishment. Instead, she conflates *the contents and conclusion of the OSI report* with *how the OSI investigation and report were completed*. She attacks the latter at length, but it is the former that is legally relevant—i.e., whether the contents of the report, which are undisputed, provide a non-discriminatory basis for Andrews's termination decision. *See McPherson v. New York City Dep't of Ed.*, 457 F.3d 211, 216 (2d Cir. 2006) ("More generally, McPherson is attacking the reliability of the evidence supporting DOE's conclusions. In a discrimination case, however, we are decidedly not

10

interested in the truth of the allegations against plaintiff. We are interested in what 'motivated the employer.'") In the absence of any evidence challenging the defendants' explanation, summary judgment is granted on the retaliatory discharge claims.

**B. Due Process**

Wooten-Francis argues that her due process rights were violated because she was entitled to, but did not receive, a hearing pursuant to Education law § 3020 before being terminated. To state a cause of action, she must show that she has "a property interest in the employment or the benefit that was removed." *Leventhal v. Knapek*, 266 F.3d 64 (2d Cir. 2001) (quoting *Bernheim v. Litt,* 79 F.3d 318, 322 (2d Cir. 1996)). This flows from the two-step inquiry the Supreme Court explained in *Board of Regents v. Roth,* 408 U.S. 564 (1972): "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Id.* at 569. Courts "examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Id.* Wooten-Francis's position as a paraprofessional was non-tenured, making her an at will employee with no property interest. *See Abramson v. Pataki*, 278 F.3d 93, 99 (2d Cir.2002) ("Employees at will have no protectable property interest in their continued employment."). Thus, without a property interest, she was not entitled to a hearing under Education Law § 3020.

In addition to lacking a cognizable property interest, Wooten-Francis also failed to challenge the investigation through an Article 78 proceeding under New York law.

11

> "Our decisions hold[] that an Article 78 proceeding constitutes an adequate post-deprivation procedure under the Due Process Clause . . . . *Parratt*, *Hudson* and their progeny, however, emphasize that there is no constitutional violation (and no available § 1983 action) when there is an adequate state post-deprivation procedure to remedy a random, arbitrary deprivation of property or liberty."

*Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877 (2d Cir. 1996) (citing *Zinermon v. Burch*, 494 U.S. at 132 (1990); *Parratt v. Taylor*, 451 U.S. 527, 541 (1981); and *Hudson v. Palmer*, 468 U.S. 517, 531, 533 (1984)).

In *Rivera-Powell v. New York City Bd. of Elections*, 470 F.3d 458, 466-67 (2d Cir. 2006), the Second Circuit discussed how due process is satisfied by the availability of an Article 78 proceeding and relied on *N.Y. State NOW v. Pataki*, 261 F.3d at 168-69 (2d Cir. 2001), "which required courts to consider the availability of Article 78 proceedings in determining whether the state has provided procedural due process." *Rivera-Powell,* 470 F.3d at 467. Indeed, "all the process that is due is provided by a pretermination opportunity to respond, coupled with post-termination administrative procedures as provided by [state] statute." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 547–48 (1985).

Thus, because Wooten-Francis had no property interest in her non-tenured paraprofessional position, and she had an opportunity to pursue, yet failed to bring, an Article 78 proceeding, there was not a denial of due process.

**C. Hostile Work Environment**

"The standards for a hostile work environment claim under Title VII, § 1981, [and] NYSHRL . . . generally are the same." *Citroner v. Progressive Cas. Ins. Co.*, 208 F. Supp. 2d 328, 339 (E.D.N.Y. 2002) (citing *Whidbee v. Garzarelli Food Specialties*, Inc., 223 F.3d 62, 69 (2d

Cir. 2000)). A plaintiff alleging a hostile work environment must come forward with sufficient evidence to show "that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of [his or] her employment were thereby altered." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002). "This test has objective and subjective elements: the misconduct shown must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive." *Alfano,* 294 F.3d at 374 (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17 (1993)). Only "harassment that transcends coarse, hostile and boorish behavior can rise to the level of a constitutional tort." *Davis v. Passman,* 442 U.S. 228 (1979).

In addition to Wooten-Francis's federal and state claims, the NYCHRL claim must be given "an independent liberal construction." *Loeffler v. Staten Island Univ. Hosp.,* 582 F.3d 268 (2d Cir. 2009), 278 (quoting *Williams v. N.Y. City Hous. Auth.*, 872 N.Y.S.2d 27, 31 (1st Dep't 2009)). Although not all district courts have followed *Loeffler,* failure to do so is error. *See Mihalik v. Credit Agricole Cheuvreux North America, Inc.,* 715 F.3d 102, 109 (2d Cir. 2013) ("As amended, the NYCHRL requires an independent analysis. Nonetheless, district courts continued—erroneously—to apply federal standards to NYCHRL claims.") (internal citations omitted). While the Second Circuit has not defined the particular contours of the review standard, at minimum the "City Code provides somewhat broader rights." *Krist v. Kolombos Rest. Inc.*, 688 F.3d 89, 97 (2d Cir. 2012). The Court will, therefore, construe the NYCHRL provisions "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Mihalik,* 715 F.3d at 109 (citations omitted).

**1. Claims are not time-barred**

Initially, defendants argue that plaintiff's claims are time-barred. A Title VII claim is time-barred if an employee does not file a charge with the Equal Employment Opportunity Commission ("EEOC") within 300 days after the alleged unlawful practice. *See* 42 U.S.C. § 2000e-5(e)(1). Claims under NYSHRL and NYCHRL are subject to a one-year statute of limitations, and therefore, any such claims must have occurred on May 13, 2010, or later. Under the continuing violation doctrine, "if a plaintiff has experienced a continuous practice and policy of discrimination, . . . the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." *Washington v. Cnty. of Rockland*, 373 F.3d 310, 317 (2d Cir. 2004) (internal quotations and citations omitted). Wooten-Francis filed her EEOC complaint "in December of 2010." Pl.'s Am. Compl. ¶ 17. Construing her complaint as broadly as possible, she alleges discriminatory conduct from 2004 through her termination on June 28, 2010. Because the latter portion of that period falls within Title VII's 300-day limitations period, and extends past May 13, 2010, under the continuing violation doctrine her claims are not time-barred under federal, state, or city law.

**2. Federal and state claims**

Turning to the merits of her federal and state claims, the allegations and evidence that Wooten-Francis offers in support of her hostile work environment claim fail to satisfy her burden. Once again, she alleges that Andrews did not permit her to pray in her classroom before classes began, to play gospel music in her classroom, to read her Bible before class, to organize a prayer group, or to hold prayer meetings in her classroom. Yet

14

she provides no evidence that Andrews did more than make statements asking her to stop these activities. Andrews never issued a policy against prayer or gospel music or prayer groups, nor did he discipline her for her continued activities. Although Wooten-Francis testified that Andrews said he would "write [her] up" for praying, she acknowledges that he did not carry through:

> Wooten-Francis: He said, "I will write you up." I said "Do whatever – do whatever you want to do. This child is having an asthma attack. He can't breathe and you are talking about me praying. This is ridiculous." So I called 911.
>
> Question: That was the next question. You called 911?
>
> Wooten-Francis: Yes.
>
> Question: Did he write you up?
>
> Wooten-Francis: Not [sic] – he said that he was, but I never got anything. He just said that he was going to.

Wooten-Francis Dep., Wooten Decl., Ex. O, at 60-61.

Statements alone can rise to a level that constitutes a hostile work environment, but they must be sufficiently "severe or pervasive" such that they alter the "terms and conditions" of employment. *Alfano,* 294 F.3d at 374. Wooten-Francis alleges only two specific comments: once when Andrews asked her, "Where is your God now?" and another at an unspecified time in 2006-2007, when he told her that praying in her classroom was unethical and illegal. Neither of these statements, uttered over a six-year span, rises to the level of severity and pervasiveness the law requires. *Id.* She points to no additional supporting evidence that Andrews's statements were either severe or pervasive, and

15

instead relies on conclusory allegations. Moreover, she continued to pray in her classroom, assemble with her prayer group, read her Bible, and engage in her religious practices, and she supplies no evidence that the terms and conditions of her employment were altered in any way. *Id.* Thus, summary judgment is granted on her Title VII and state hostile work environment claims.

**3. City law claim**[7]

Finally, an independent analysis of Wooten-Francis's city claim shows that it also fails, even "construing the NYCHRL's provisions broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Mihalik,* 715 F.3d at 109 (citations omitted). The Second Circuit has relied upon state court interpretations of the NYCHRL following the decision in *Williams v. New York City Housing Authority,* 872 N.Y.S.2d 27 (1st Dep't 2009), which formed the basis for the requirement that NYCHRL be analyzed separately from federal and state claims. In that vein, the Court turns to *Hernandez v. Kaisman,* 957 N.Y.S.2d 53 (1st Dep't 2012), which discussed *Williams* at length in the context of a gender discrimination suit.

The plaintiffs' evidence in *Hernandez* fell short of the "severe and pervasive" standard required under federal law, but met the *Williams* standard required to defeat summary judgment on the city law claim because "[t]he record support[ed] plaintiffs' claim that defendant took a perverse pleasure in demeaning and embarrassing his female employees. This was obvious from his statements, related by plaintiffs, concerning, in the

case of Hernandez, the size of her breasts, and in the case of Herarte, the size of her backside." *Id.* at 59.

That type of animosity is not demonstrated by the evidence that Wooten-Francis presents in connection with Andrews. Instead, the evidence is lacking in the places where it would mostly likely appear. For example, Wooten-Francis submits the affidavit of one of the members of her prayer group, Alexia Huart ("Huart"), whom she claims was also discriminated against by Andrews. In Huart's affidavit, however, there is no mention of religious discrimination; she states only that "The disrespect was more in the lack of communication, when needed." Huart Aff., Wooten Decl., Ex. I. Another prayer group member, Christine Marshall ("Marshall"), stated that "George Andrews attempted to intimidate and harassed many staff members as well as myself, this led to an extremely toxic work environment where education became less imperative under his leadership." Marshall Aff., Wooten Decl., Ex. J. But again, despite her clear displeasure with Andrews, there was no mention of religious animosity.

A third affidavit, from Emma Salisbury ("Salisbury"), was the only one to mention religion. Salisbury stated that "George Andrews did not like me, Anita V. Wooten-Francis, Alexia Huart, Christine Marshall, Sameer Ramanani, Mary Maus, or Helen Ani because of our religious beliefs." Salisbury Aff., Wooten Decl., Ex. K. Not only is Salisbury's affidavit the sole instance of support for Wooten-Francis in an extensive record otherwise devoid of supporting evidence, but its statements are conclusory, and would not be admissible at trial as required for a Rule 56 opposition affidavit. Thus, the evidence—even viewed broadly in favor of Wooten-Francis under the more liberal analysis required for city law

17

claims, *see Mihalik,* 715 F.3d at 109—fails to create a triable issue of fact for her to survive summary judgment. At most, a reasonable fact finder could conclude that Andrews may have been a poor manager who made inappropriate remarks. Accordingly, defendants' motion as to the NYCHRL hostile work environment claim is also granted.

## IV.

For the foregoing reasons, summary judgment is granted for defendants on all claims.[8]

**SO ORDERED.**

      /S/ Frederic Block
FREDERIC BLOCK
Senior United States District Judge

December 19, 2013
Brooklyn, New York

---

[8]Having dismissed the federal claims, the Court could have declined to exercise supplemental jurisdiction over the state and city law claims. *See* 28 U.S.C. § 1367(c). Judicial economy is best served here by exercising supplemental jurisdiction and dismissing the non-federal claims. *See Chambers v. Capital Cities/ABC*, 851 F. Supp. 543, 545 (S.D.N.Y. 1994) ("Duplicative litigation at multiple levels of government involving the same facts [is] contrary to the objectives of the Supplemental Jurisdiction Act and the public interest.").